### P. C. Ross *v.* E. A. G. Ross.

**Husband and Wife—Note of the Wife to Husband.**

The note of a married woman does not bind her personally. It cannot bind her personal estate unless signed by herself and husband and executed for necessaries for herself or family.

**Note of Wife to Husband.**

Where a note is executed by the wife to the husband, to be enforced there must be some contract back of it authorizing the chancellor to interfere to prevent a fraud or great wrong to the husband. The note itself in such a case does not evidence a consideration.

**Note of Wife to Husband.**
> If at all, it is only in exceptional cases when the note of a married woman can be made the foundation of an action in favor of her husband.

APPEAL FROM McCRACKEN CIRCUIT COURT.

December 19, 1874.

OPINION BY JUDGE LINDSAY:

The ground relied on by appellee and cross-appellant, for obtaining a divorce, is that her husband had, prior to the filing of her original petition, behaved towards her for more than six months in such a cruel and inhuman manner, as to indicate a settled aversion to her, and to destroy permanently her peace and happiness.

The evidence does not show that the parties lived together as harmoniously and affectionately as could have been desired. Appellant was not free from blame, but no such conduct upon his part is proved, as would authorize the granting of the relief sought. Incompatibility of temper, dissimilarity of taste, and want of affection upon the part of both parties, are pretty conclusively established; but the ground for divorce set out in the petition is not made out.

The scene at the hotel, after the divorce suit had been commenced, so graphically described in the pleadings, was brought about by the disregard by the appellee of the order of court, and appellant seems to have used no more violence than was necessary to protect his person from the assaults of his wife.

The petition for divorce was properly dismissed, and the judgment upon the cross-appeal is *affirmed*. Appellant complains that the chancellor erred in refusing to afford him relief on account of the note for $8,000 bearing date April 6, 1865. The note of a married woman does not bind her personally. It does not bind her general estate unless signed by herself and husband, and executed for necessaries for herself or family.

Mrs. Ross had no separate estate of any kind when the note was executed. Her separate estate in the property she owned in April, 1865, was not called into existence until January 30, 1866, when the act of the legislature authorizing her to do business as a *feme sole,* and giving to her the sole and exclusive control of her said property, was passed and approved. There is nothing in this act indicating an intention to make valid and binding upon Mrs. Ross or her property, acts or contracts which theretofore did not bind

18

the one or the other. If the collection of said note can be enforced, it must be for some reason authorizing the interference of the chancellor, independent of the general statutes relating to married women, and their rights and responsibilities, and of the special act of January, 1866.

Appellant, in support of her claim to relief, cites us to the case of *D. Livingston v. M. & E. Livingston, et al.*, 2 John. Ch. 537. In that case it was established that the husband and wife agreed that the husband should purchase, in the wife's name, a lot of ground, and build a house thereon, and that the cost of erecting the new house should be paid out of the proceeds of a house and lot then owned by the wife, she agreeing that the last named house and lot should be sold for that purpose when the new house was completed.

The husband complied literally with his part of the agreement, and the wife dying suddenly, before the old house was sold, Chancellor Kent decreed in an action of the surviving husband against the infant children and heirs at law of the wife, that it should be sold, and the moneys arising from the sale, be brought into court to abide its further order. We may assume that such part of the money so invested as was necessary, was applied to the payment of the expense incurred in erecting the new house. Under the circumstances of that case, the agreement between the husband and wife negatived the presumption of law that otherwise would have arisen, that the purchase of the lot in the name of the wife, and the erection of the house, was intended as an advancement and provision for her.

The contract, although oral, was partly executed, which took it out of the statute of frauds and perjuries, as construed by the New York courts, and the chancellor decided that under a New York statute entitled "an act concerning infants," he had the right to enforce it. It is very difficult from the opinion to ascertain the exact ground upon which the chancellor rests his judgment. We assume, however, that it was upon the idea that his wife, if living could not hold both houses and lots, that if she relied on her coveture as a protection against the enforcement of her agreement to unite in the sale of the first house and lot, she would not be allowed, in equity, to keep the second, and that her heirs at law being merely volunteers, occupied no better attitude than their mother would have done.

In the case under consideration, there is no evidence whatever tending to establish a contract of any kind between Ross and his wife. No explanation is given as to the circumstances under which

the note was executed. No consideration is proved or attempted to be proved, and so far as the testimony is concerned, the note cannot be enforced, either at law or in equity, without the application to the note of married woman to her husband, of the rule of law, that a writing imports a consideration. Of course, in such a case, that rule has no application. The note itself does not evidence an agreement of any kind, except the promise by the wife upon demand to pay to the husband $8,000, or to give to him the Wolf lot. The consideration for the promise is not set out. To bring the case within the rule acted on in *Livingston v. Livingston,* if that case be regarded as a safe precedent, it was essential to show an agreement between the husband and wife of some kind.

It is not enough to show that the husband had permitted the wife to invest personal estate, to which he might have asserted claim, in real estate and take the title to herself. Such permission would ordinarily be treated as an advancement to, or provision for the wife. In this case, the wife seems to have been the business partner, and if not the legal owner, the ostensible owner, and the actual possessor and controller of the personalty. She acquired by her industry and management, the entire estate; she always claimed it, and her husband always recognized her claim; and when she invested the moneys so held and claimed in realty, both the husband and wife seemed to regard the transactions as ordinary and usual matters of business.

It is difficult, therefore, to infer that the consideration for the execution of the note was the consent by the husband, that the wife should do that which the proof conduces to show he all the while conceded she had the absolute and undoubted right to do, with or without his consent.

Further than this, appellant does not allege that there was an agreement of any kind, (other than that set out in the note) between himself and his wife. After reciting the facts that large sums of money had been invested in realty, and the titles all taken to his wife, he says: "At this juncture of affairs, and to show that defendant was not really giving to his wife all their means, and as an evidence that he still had an interest therein, and in consideration of money thus expended by him for property, the title of which was conveyed to her, she on April 6, 1865, executed to him her individual note," etc.

If the note was to show or to evidence an agreement between Ross and his wife, the agreement itself, and not the evidence thereof,

should have been pleaded. The note of a married woman can be made the foundation of an action in favor of her husband, if at all, only in exceptional cases. This is not one of those cases. Hence, if the note be only an exhibit, or an evidence of a contract or agreement, the contract or agreement which must be the foundation of the action, should be set out so that the court may determine whether the evidence or exhibit establishes its existence.

The next paragraph of the answer and cross-petition of December 11, 1872, shows that the petition to the legislature to have Mrs. Ross empowered to do business as a feme sole, had no connection with the execution of the note. Appellant says that it was about these times that that matter began to be talked of beween "the parties."

But if we have not given to the evidence the proper weight, still, under the pleadings in this cause, no relief can be afforded. Even in equity, it is only under peculiar circumstances that the husband can have relief against his wife. It is not enough that to refuse relief will work a great hardship. The right to relief must be based upon an express promise or agreement by the wife, which is unconscientious for her to refuse to perform, and even then, if the property or estate she may have acquired upon the faith of the promise can be restored, the promise will not be enforced.

In this case the party seeking relief does not set up in his pleadings an express promise. He states facts from which he insists such a promise may be implied. Such pleading would be insufficient in any case, and the rules will not be relaxed in an action by a husband against his wife.

Upon the whole case we are of opinion that the evidence is not sufficient to authorize the intervention of the chancellor. We are further of opinion that the pleadings are fatally defective, and for that reason no relief could be afforded even if the proof made out a case.

Judgment *affirmed.*

*R. K. Williams, for appellant.*
*J. B. Husbands, L. D. Husbands, for appellee.*

